UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAMARA CRAWFORD,

    Plaintiff,

v.                                              CASE NO: 8:08-cv-927-T-26MSS

THE CITY OF TAMPA, et al.,

    Defendants.
_____/

## O R D E R

Before the Court is Defendants' Motion to Dismiss Second Amended Complaint (Dkt. 21), and Plaintiff's Response in Opposition. (Dkt. 25). In this action, Plaintiff, pro se, sues the City of Tampa, Mayor Pam Iorio, and ten individual employees of the City for employment discrimination, sexual harassment and violations of various federal statutes. After careful consideration of the motion and the allegations of the Second Amended Complaint (Dkt. 18), the Court concludes that motion should be granted.

**General Allegations**

*Employment History with the City*

The following facts are set forth in the general allegations section of the Second Amended Complaint (the Complaint). (Dkt. 18, pp. 3-12). Plaintiff is a black female over the age of forty. (Dkt. 18 at para. 5). Plaintiff was an employee of the City from 1995 until her termination on May 24, 2007. (Dkt. 18 at para. 11). Over her twelve-year career with the City, she initially worked as a paralegal in the Tampa Police Department for five years and was promoted to the Internal Affairs Bureau in March 2000. (Dkt. 18, para.

54). In July 2001, she was moved to Business and Housing Development. (Dkt. 18, para. 55). Her last change of position within the City occurred in April 2005 to the Department of Growth Management and Development Services. (Dkt. 18, para. 56). Overall, she received 11 years of "outstanding" performance evaluations, and one year of "excellent" performance. (Dkt. 18, para. 53).

*Denial of Leave*

Plaintiff was diagnosed in June 2005 with Major Depressive Disorder (MDD) and Acute Anxiety Disorder (AAD). (Dkt. 18, paras. 14, 21-22). On March 19, 2007, Plaintiff formally requested time off for nine days from March 22 through April 5, 2007. (Dkt. 18 at para. 24). She claims her immediate supervisor, Brenchley, approved only the first two days, and forwarded the remaining seven for approval from Miller, presumably Brenchley's supervisor. (Dkt. 18 at para. 24). Miller denied the request. (Dkt. 18 at para. 24). At a meeting on March 22, Colina, Barrios, and D'Andrea[1] told Plaintiff that the nine days' leave was denied. (Dkt. 18 at para. 25-26).

Plaintiff alleges that "her" supervisors, Miller and Colina,[2] became "enraged" when she requested time off from work in 2007 for her illnesses. (Dkt. 18, paras. 14, 21-22). Plaintiff alleges that Miller's denial of leave time was contrary to the City's policy, because Miller had previously permitted a white employee, Catherine Coyle, to work

---

[1] These three people are employees of the City, but it is unclear what positions they hold or whether any are similarly situated to Plaintiff.

[2] It is unclear exactly who is a supervisor of Plaintiff and whether any of the named individual Defendants are similarly situated to Plaintiff.

from home. (Dkt. 18 at para. 27). Miller showed favoritism to D'Andrea and Brenchley when she permitted D'Andrea to take work projects to Brenchley who had undergone surgery and was working from home. (Dkt. 18, para. 29). Plaintiff was never offered the option of working from home.[3] (Dkt. 18, para. 30).

Plaintiff alleges that Brenchley, her immediate supervisor, telephoned her at home from March 28 through May 24, 2007, asking her when she would return to work. (Dkt. 18, para. 32). Plaintiff characterizes these calls as "badgering." (Dkt. 18, para. 32). Plaintiff further alleges that in one of the March telephone calls, Brenchley threatened to terminate her if she did not "email the City while on leave" with reports about her medical condition. (Dkt. 18, para. 34). In one of Brenchley's April telephone calls, Plaintiff alleges that he harassed her by telling her the doctor's note was not on proper letterhead. (Dkt. 18, para. 36).

### *Sharing of Plaintiff's Medical Information*

Plaintiff alleges that Brenchley told her that his supervisors had directed him to tell her to fax her medical records to the City, which she did.[4] (Dkt. 18, para. 33). The fax

---

[3] Plaintiff cites another example of favoritism to a white employee by Snelling. She alleges that Snelling awarded Angela Hurley an "Outstanding" rating during Hurley's first six-month probationary period. (Dkt. 18, para. 28). Snelling had told Plaintiff that she could not receive such a rating, implying that the highest possible rating "should not be awarded to someone in an initial probationary status." (Dkt. 18, para. 28). This act, standing alone, does not give rise to any actionable conduct. Plaintiff's probationary term occurred twelve years ago, making any hypothetical claim time-barred, and anything that happened in her probationary period in 1995 is unrelated to Plaintiff's termination in 2007.

[4] Plaintiff claims she was told by her doctors at some point in time not to return to work until after August 3, 2007. (Dkt. 18 at para. 14).

machine was located in an unsecured area. (Dkt. 18, para. 33). D'Andrea had told her to send the doctor's note to each of her supervisors, which included twelve individuals according to Plaintiff. (Dkt. 18, paras. 41-42). Plaintiff alleges that Colina shared her private medical information with employee Cordero who then shared the information with employees in the accounting department. (Dkt. 18, para. 39). She received a telephone call wishing her well from Isaiah Johnson, an employee in the City's accounting department. (Dkt. 18, para. 39). Plaintiff claims the request for medical information from her, as opposed to "white employees similarly situated," violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the American with Disabilities Act (ADA), and the Family Medical Leave Act (FMLA). (Dkt. 18, para. 37).

In late 2006 and early 2007 when Plaintiff complained to Brenchley, Colina, D'Andrea, and Barrios about the sharing of her medical information with other employees, Sousa posted her emails on the public bulletin board and ridiculed her as a "whiner/cry baby." (Dkt. 18, para. 43). Plaintiff claims that Cordero and Newson witnessed Sousa and Watterson speaking derogatorily of Plaintiff, *before* she left on sick leave. (Dkt. 18, para. 44) (emphasis added). She further alleges that Sousa and Watterson made frequent gender-based comments about Plaintiff, such as "weak woman" and "whining little girl." (Dkt. 18, para. 47).

### *Complaints*

Plaintiff alleges she complained about harassment, racial discrimination, and improper dissemination of her medical records to the Mayor's office, Miller, Snelling, Colina, Barrios, D'Andrea, and Brenchley. (Dkt. 18, para. 46). She claims that her

medical conditions worsened from the harassment and discrimination, and her doctors placed her on full medical leave, finding her work place a threat to her health. (Dkt. 18, para. 49). At some point in time, Plaintiff requested sick leave from the sick bank, which Kimberly Crum of the Human Resources Department denied. (Dkt. 18, paras. 50-51). While on medical leave, Plaintiff was fired for incompetence and absence without leave. (Dkt. 18, para. 52). She contests that she was ever absent without leave, based on her doctors' orders not to return to work. (Dkt. 18, para. 58). She claims she otherwise qualified for disability leave, FMLA leave, and ADA accommodation. (Dkt. 18, para. 58).

Following the sixty-two paragraphs of the above-mentioned general allegations, the Complaint sets forth three counts titled: (1) race discrimination; (2) sexual harassment founded on the Florida Civil Rights Act (FCRA); and (3) violations of the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d, *et seq*., Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq*., and Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. Some claims must be dismissed with prejudice and other claims will be permitted to be repleaded for the fourth and final time.[5]

### Count I---Race Discrimination Against Individuals

In addition to the numerous general allegations set forth in the Complaint, Plaintiff alleges in count I that similarly situated white employees were continued on the payroll and allowed to work from home. She claims she was discriminated against with regard to

---

[5] Plaintiff has attempted three times to state claims for relief. See dockets 2, 15, and 18.

access to the sick time bank and to legitimate leave with or without pay. With respect to similarly situated individuals, she alleges that two white employees, Brenchley, her supervisor, and Coyle, an unidentified female employee, received more favorable treatment that she. These barebones, conclusory allegations form the entire basis for her claim of race discrimination against the individual Defendants.

In the Eleventh Circuit, a heightened pleading requirement exists in § 1983 cases involving individual defendants who can raise qualified immunity as a defense. See Swann v. Southern Health Partners, Inc., 388 F.3d 834, 838 (11th Cir. 2004) (citing GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1366-67 (11th Cir. 1998) and noting that the heightened pleading requirement survived Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). Plaintiff has failed to adequately allege facts concerning the comparators----Brenchley and Coyle. A plaintiff must show that a comparator employee was "'involved in or accused of the same or similar conduct,' yet [was] disciplined in a different more favorable manner." Jackson v. Hennessy Auto, 190 Fed. Appx. 765, 767-68 (11th Cir. 2006) (quoting Anderson v. WBMG-42, 253 F.3d 561, 564 (11th Cir. 2001)). Brenchley, by the very allegations of the Complaint, is Plaintiff's supervisor and therefore not similarly situated. No facts are alleged regarding Coyle.

Even if Plaintiff had sufficiently alleged a claim for relief for racial discrimination under 42 U.S.C. § 1983, the individual defendants are entitled to the defense of qualified immunity based on the allegations of the Complaint. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 821, 823 (1982) (holding that individual § 1983

6

defendants are protected from suit for the performance of discretionary acts through qualified immunity). On a motion to dismiss based on qualified immunity, the allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the plaintiff. See Wilson v. Strong, 156 F.3d 1131, 1133 (11th Cir. 1998). In this case, Plaintiff alleges that the individual Defendants were acting within the scope of their discretionary authority as employees and agents of the City.[6] (Dkt. 18, para. 64). Once established that the conduct falls within the discretionary function of the job, the burden then shifts to the Plaintiff to establish the two-step inquiry to defeat application of qualified immunity: (1) the Defendants committed a constitutional violation; and (2) the constitutional right the Defendants violated was "clearly established" at the time the violation occurred. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

Under the first prong, Plaintiff has failed to allege the violation of any constitutional right at all. See GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1366-67 (11th Cir. 1998) (noting that qualified immunity inquiry and Rule 12(b)(6) standard become intertwined in deciding motion to dismiss in equal protection claim). While the right to be free from intentional racial discrimination was clearly established during the relevant time period of this Complaint, see Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1478 (11th Cir. 1991), the allegations of the Complaint do not give rise to

---

[6] Both supervisors and individual employees may be held liable under § 1983. They may be sued for their own personal actions----direct liability, and supervisors may also be sued for the actions of their subordinates---supervisory liability. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

such an obvious violation of the law.  Based on the facts as alleged, the individual Defendants would be entitled to qualified immunity.  Because the Court will extend yet another opportunity for the pro se Plaintiff to amend, the motion to dismiss count I is granted without prejudice.

### Count II—FCRA—Sexual Harassment Against All Defendants

Although count II is titled "sexual harassment," Plaintiff refers to both race and sex discrimination as if they are interchangeable, when they are not.  (Dkt. 18, paras. 68, 71, 72 & 73).  She alleges "unwelcome race discrimination" and cites to the "aforementioned actions" by the Defendant.  In the sixty-seven preceding paragraphs of the Complaint, it is simply impossible to glean from all of them what acts to which Plaintiff refers.  Count II is woefully sufficient in alleging a claim for sexual harassment under the FCRA.  In any event, no cause of action under the FCRA exists against the Defendants in their individual capacities.  See Albra v. Advan, Inc., 490 F.3d 826, 832 (11th Cir. 2007) (citing Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991), and recognizing that municipal officers may not be sued in their individual capacity under Title VII); Blount v. Sterling Healthcare Group, Inc., 934 F.Supp. 1365 (S.D. Fla. May 28, 1996) (reasoning that language of FCRA and Title VII are almost identical and therefore individual-capacity suits are not permitted under the FCRA); Urquiola v. Linen Supermarket, Inc., No. 94-14-CIV-ORL-19, 1995 WL 266582 (M.D. Fla. 1995) (holding same).  Consequently, count II against the individual Defendants is dismissed with prejudice.  Insofar as count II seeks relief against the City, Plaintiff may have one more attempt to set forth facts alleging a claim for racial discrimination or sexual harassment.

**Count III—HIPAA, ADA, and FMLA Violations Against Individuals**

Count III alleges that the individual Defendants should have known that confidential medical information sent over the fax machine could have been viewed by all employees of the City. This count must be dismissed with prejudice, however, because no individual liability exists under the FMLA or the ADA. See Wascura v. Carver, 169 F.3d 683, 687 (11th Cir. 1999) (holding that no federal jurisdiction exists under FMLA over claim against public official in his or her individual capacity); Mason v. Stallings, 82 F.2d 1007, 1009 (holding that no individual liability exists under ADA). As to HIPAA, no private right of action exists. See Acara v. Banks, 470 F.3d 569, 570-72 (5th Cir. 2006) (citing Means v. Independent Life & Accident Ins. Co., 963 F. Supp. 1131, 1135 (M.D. Ala. 1997), which relies on Wright v. Combined Ins. Co. of Am., 959 F.Supp. 356, 363 (N.D. Miss. 1997)). Consequently, count III is dismissed with prejudice and Plaintiff shall not be permitted to amend count III against the individual Defendants.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendants' Motion to Dismiss Second Amended Complaint (Dkt. 21) is **GRANTED**.

(2) Count I for racial discrimination against the individual Defendants fails to state a claim for relief; however, Plaintiff may file an amended count I, if she so desires, within 15 days of the date of this order.

(3) Count II seeking a hybrid of sexual harassment and racial discrimination against both the individual Defendants and the City fails to state a claim for

relief. Plaintiff may file an amended count II against the City, if she so desires, within 15 days of the date of the order. Count II against the individual Defendants is hereby **DISMISSED** with prejudice.

(4) Count III for violations of HIPAA, FMLA, and ADA against the individual Defendants is hereby **DISMISSED** with prejudice.

(5) Plaintiff shall file a Third Amended Complaint consistent with this order within 15 days.

(6) Defendants named in the amended pleading shall file a response within 15 days of service.

**DONE AND ORDERED** at Tampa, Florida, on September 12, 2008.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Plaintiff, pro se