**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

KAMARA CRAWFORD and
OLIVER CRAWFORD, SR.,

       Plaintiffs,

v.                               CASE NO: 8:08-cv-927-T-26EAJ

THE CITY OF TAMPA,

       Defendant.

                               /

## O R D E R

Before the Court is Defendant's Motion for Summary Judgment and Statement of

Undisputed Facts with various affidavits, depositions, and exhibits on file (Dkts. 74, 75,

106 & 107), and Plaintiffs' Response. (Dkt. 109). After careful consideration of the

motion and the entire file, the Court concludes that the motion should be granted.

## PERTINENT FACTS

The City readily concedes that the only fact agreed upon by the parties is the span

of Plaintiff Kamara Crawford's employment with the City: February 20, 1995 through

May 24, 2007. (Dkt. 74, pp. 13, 17).[1]  This Court has set forth most of the pertinent facts

in a prior order on a prior summary judgment. (Dkt. 88). For purposes of this decision on

---

[1]   Plaintiff Kamara Crawford's deposition, together with all of its exhibits, is
located at docket 74.

the most recent motion for summary judgment, however, the Court will set forth only the salient or material facts.  While the Plaintiffs contend that the facts are disputed and therefore prohibit entry of summary judgment, the Court finds that the facts they contend are disputed are not material and as such do not avoid entry of summary judgment against them.

As defined by the Eleventh Circuit, the remaining claim in this case is the claim brought pursuant to the Family Medical Leave Act, 29 U.S.C. § 2617 (the FMLA), and the state law derivative claim for loss of consortium.  (Dkt. 95).  The main issue in this summary judgment is whether Plaintiff Kamara Crawford embarked on an extended leave because of a medical condition and, if so, whether she informed the City of potentially qualifying leave under the FMLA, thereby triggering the City's burden to ascertain whether her absence actually qualified for FMLA protection.[2]  To establish an interference claim under the FMLA, the plaintiff must prove by a preponderance of the evidence that she is entitled to the benefit she claims and that the defendant interfered

---

[2]   The following guidance was provided in the Eleventh Circuit's order:
'[t]he Code of Federal Regulations makes clear that an employee taking unforeseeable leave need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.' Id. at 1209 (internal quotation marks omitted).  'Once an employee taking unforeseeable leave informs his employer that potentially FMLA-qualifying leave is needed, the regulations place on the employer the burden of ascertaining whether the employee's absence actually qualifies for FMLA protection.' Id.
Crawford v. City of Tampa, 397 Fed.Appx. 621 (11th Cir. Sept. 28, 2010) (unpublished).

with or denied that benefit.  See O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1353 (11th Cir. 2000).  In this case, Plaintiff Kamara Crawford claims that she was wrongfully terminated when she failed to show up for her predisciplinary hearing.  She testified at her deposition that her physician had "extended" her leave and had instructed her not to return to work.  (Dkt. 74, pp. 13-14).

Until her termination on May 24, 2007, the following chain of events occurred regarding a potentially FMLA-qualifying leave.  Several communications from Plaintiff are important because the City is held to have knowledge of all such communications insofar as they may put the City on notice of qualifying leave.  In early March 2007, Plaintiff, as the sole proprietor of her business known as Intellect Worldwide or Intellect Professional Services, wrote a letter to the City inviting its various departments to participate in a trade show hosted by her business on April 6 and 7, 2007.  (Dkt. 74, pp. 49-50, Ex. 5).  Thereafter, on March 19, 2007, Plaintiff requested "leave without pay to help with my convention" for March 23, 2007 through April 5, 2007.  (Dkt. 74, pp. 52-53, Ex. 6).  Although the initial letter of March 19, 2007, does not state the reason for her requested absence without pay, or "AWP," a second letter written that same day, March 19, states that Plaintiff was "in the midst of a huge undertaking of an international convention" and needed the time to prepare.  (Dkt. 74, pp. 53-54, Ex. 7).  The City denied

Case 8:08-cv-00927-RAL-TBM   Document 110   Filed 03/17/11   Page 4 of 9 PageID 928

this request because according to the City personnel manual, AWP is granted only on an emergency basis and not in lieu of annual leave. (Dkt. 74, pp. 54-55, Ex. 8).[3]

At this point in time, there was no mention to anyone of any medical reason for Plaintiff's desire to take AWP. Despite this glaring absence, Plaintiff testified that she took off from March 23 through April 5, 2007 and after, "with medical substantiation." (Dkt. 74, pp. 55-57). She testified that the "medical substantiation" included major depressive disorder, acute anxiety disorder, and post-traumatic stress syndrome. (Dkt. 74, p. 56). She testified that she did not work on her convention because it was cancelled. (Dkt. 74, pp. 56-57).

Plaintiff next applied for hours from the sick leave bank. (Dkt. 74, p. 57). Plaintiff's application for usage of the sick leave bank dated April 26, 2007, shows that she requested an "extended leave" from March 28, 2007 through May 23, 2007. (Dkt. 74, Ex. 11). Her application states that she was "on leave secondary to treatment for psychiatric conditions of major depressive disorder and anxiety disorder NOS." (Dkt. 74, Ex. 11). She submitted three letters from Dr. Dore, two of which are dated before she was denied hours from the sick leave bank. (Dkt. 74, Ex. 9, 10 & 15). The first letter

---

[3]   After receiving the denial of her request by email, she responded by email on March 22, 2007, requesting "a brief (10-minute) meeting" with Adriana Colina, the Administrative and Fiscal Coordinator of Growth Management & Development Services for the City, "as an EMERGENCY REQUEST to discuss" the denial. (Dkt. 74, Ex. 8). Plaintiff was required to assert an emergency as a prerequisite to obtain AWL. (Dkt. 75, para. 9; Dkt. 75, Ex. 6, para. 2). She admits that she was granted the meeting, but was again denied the request for AWP. (Dkt. 74, pp. 55-56).

-4-

dated April 23, 2007, requests that Plaintiff be excused from her work duties until May 2007, but does not mention her precise medical condition. (Dkt. 74, Ex. 9). The second letter dated April 27, 2007, which was not submitted along with the application, describes her diagnoses as "major depressive disorder and anxiety disorder NOS," states that she is unable to work, and notes that she will be able to return to work on May 23, 2007. (Dkt. 74, Ex. 10). The third letter dated May 23, 2007, the day before her termination, states that Plaintiff "will need to continue her leave until June 29, 2007." (Dkt. 74, Ex. 15).

Her application for usage of sick leave bank was disapproved on May 11, 2007, based on her failure to follow the sick leave bank policy. (Dkt. 74, Ex. 11). Specifically, the application to use the sick leave bank was not submitted within seven days of the date the employee desired to use it[4] and the application was not accompanied by medical substantiation in that a second physician's note was missing. (Dkt. 74, Ex. 11). Plaintiff testified that she did submit a second physician's note dated May 24, 2007; however, she was terminated on that date.[5] (Dkt. 74, pp. 67-68, Ex. 13). The second note from Dr. Thierry stated that she was seen in his office on that day, May 24, 2007, and that "she should not return to work at this time . . [but] she may be able to return on 8/2/2007." (Dkt. 74, pp. 68-69, Ex. 13). Plaintiff was terminated on May 24, 2007, for reasons of

---

[4]   She requested her leave to start March 28, 2007, and she did not file her application until April 26, 2007.

[5]   Her predisciplinary hearing was scheduled for May 24, 2007; however, she did not attend. She was notified on May 18, 2007, that she would be terminated if she failed to attend the hearing. (Dkt. 74, Ex. 12).

incompetence, habitual tardiness, absenteeism, and abuse of leave privileges.  (Dkt. 75, para. 11; Dkt. 74, Ex. 12).

## STANDARD OF REVIEW

Summary judgment must be entered where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Where the moving party meets its burden of production, the "non-moving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007).  To pose a jury question, however, a conflict must exist in the evidence.  See Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).  The non-moving party's evidence must be believed and all justifiable inferences must be drawn in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## ANALYSIS

It is not fatal to Plaintiff's claim that she never specifically asked for leave under the FMLA.  See Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1383 (11th Cir. 2005) (citing 29 C.F.R. §§ 825.302(c) and 825.303(b) which both state that '[w]hen an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA").  The issue is whether, given these facts, the City had the obligation to ascertain or investigate whether

she had a serious health condition.  To trigger the City's obligation, it must be given

"sufficient notice" that a potentially FMLA-qualifying leave is needed.  Cruz, 428 F.3d at

1383 (citing Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d

1199, 1209 (11 Cir. 2001)).  The regulations differentiate between foreseeable and

unforeseeable serious medical conditions, with a foreseeable condition involving planned

medical treatment.  This case apparently would involve only an unforeseeable medical

condition because Plaintiff had not been at work for almost four weeks before she

mentioned anything to the City about her mental state of depression, anxiety, and post-

traumatic stress.  Plaintiff made this communication for the very first time through an

application for usage of the sick leave bank on April 26, 2007.[6]

The facts show that the last day Plaintiff showed up for work was March 23, 2007.

The record reveals that it was not until, at the earliest, the time which they received the

application for the sick leave bank dated April 26, 2007, that the City knew that she was

---

[6]  Although the City's own documentation reveals that Plaintiff telephoned in to work on eight separate occasions during the time period of March 28 through April 23, 2007, those notes show that the Plaintiff referenced only that she was "out sick" with no further detail.  (Dkt. 74, Ex. 10, pp. 3-4).  See Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997) (holding that employee's husband's phone call to employer wherein he stated his wife was undergoing tests in the hospital did not trigger employer's burden to request more information where he did not inform employer that wife had suffered a nervous breakdown); Andrews v. CSX Transportation, Inc., 737 F.Supp.2d 1342 (M.D. Fla. 2010) (holding that employer had no notice of need for FMLA leave when employee phoned in sick and provided a doctor's note with unspecified ailments); see also Cooper v. Fulton Cty., Ga., 458 F.3d 1282, 1286 (11th Cir. 2006) (distinguishing Gay from the facts of notice in that case).  During this time period, Plaintiff did not divulge any information that would have put the City on notice of a serious medical condition.

claiming anything specific about a medical condition.  At the very least, Plaintiff would be deemed to have withheld critical information regarding the reason for her request for leave.  Cruz, 428 F.3d at 1385-86 (holding that employee's failure to inform employer that daughter was suffering pregnancy complications prevented burden shifting to employer to ascertain whether absence qualified as FMLA leave).

Even if Plaintiff could make an FMLA leave request after one month of unexcused absences, her initial application for withdrawal from the sick leave bank was not accompanied by a physician's note that supported her claim.  Dr. Dore's note dated April 23, 2007, and attached to the application gave no medical reason for her inability to work and stated that she would be back at work in May 2007.  Plaintiff had already missed work for a substantial number of days, and the City was operating under the impression that she was organizing a convention on April 6 and 7, 2007.  On this record, Plaintiff did not submit any written documentation until late April that even mentioned her mental condition.[7]  The record is devoid of any verbal notice she gave to the City describing what serious medical condition she had which would give rise to an FMLA-qualifying leave.  Her long record of unexcused absences do not suggest need for FMLA leave.  See Andrews v. CSX Transportation, Inc., 737 F.Supp.2d 1342, 1351 (M.D. Fla. 2010).

---

[7]  It is unclear exactly when the City received the two later letters written by Dr. Dore.  It is clear that Plaintiff did not attend her predisciplinary hearing on May 24, apparently the same day she had an appointment with a second physician, which was required or requested by the City with respect to any leave taken pursuant to the sick leave bank.

Plaintiff's claim that the City interfered with her FMLA rights is meritless because it is clear that she cannot maintain an action to be reinstated from FMLA leave that was never granted.  See <u>Kilpatrick v. Town of Davie</u>, No. 08-60775-CIV, 2009 WL 1767188 (S.D. Fla. Jun. 22, 2009).  Having found that no genuine issues of material fact exist with respect to whether the City interfered with Plaintiff's FMLA rights, Plaintiff Oliver Crawford, Sr.'s claim for loss of consortium, derivative in nature, also fails.  Accordingly, summary judgment is granted in favor of the City.[8]

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt. 106) is **GRANTED**.  The clerk is directed to enter judgment in favor of Defendant and to close the file.

**DONE AND ORDERED** at Tampa, Florida, on March 17, 2011.


_s/Richard A. Lazzara_
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record and Plaintiffs, *pro se*

---

[8]  In making this decision, the Court has taken note of Plaintiff's position that the City knew about her depression and problems from years prior and that the City failed to provide her with an FMLA form.  For the reasons set forth in this order, Plaintiff failed to put the City on notice that she needed FMLA leave.  That the City may have known in 2005 that she suffered from depression, taking the Plaintiff's averments as true, does not place a burden on them to guess that her one month's unexcused leave was attributable to depression, anxiety, and post-traumatic stress.